UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELA GARCIA, | Case No. CV 10-7792 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I. SUMMARY

On October 26, 2010, plaintiff Estela Garcia ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 1, 2010 Case Management Order, ¶ 5.
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 15, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 8). Plaintiff asserted that she became disabled on November 21, 2007, due to postpoliomyelitis syndrome. (AR 120). The ALJ examined the medical record and heard testimony from plaintiff and a vocational expert on September 3, 2009. (AR 24).

On September 28, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 17). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: history of poliomyelitis with left lower extremity weakness, and depression (AR 10); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 10); (3) plaintiff retained the residual functional capacity to lift and carry 10 pounds frequently, stand or walk two hours and sit six hours in an eight-hour workday with additional exertional and nonexertional limitations (AR 10);[2] (4) plaintiff could not perform her past relevant work (AR 15); (5) there are jobs that exist in significant numbers in the

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] The ALJ determined that plaintiff (i) could lift and carry 10 pounds occasionally and 10 pounds frequently; (ii) could stand or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday; (iii) could occasionally climb stairs, balance, stoop and crouch; (iv) could not kneel or crawl; (v) could handle and finger frequently but not repetitively with the bilateral upper extremities; (vi) had less than moderate limitation in attention/concentration; and (vii) was limited to performing simple, repetitive tasks. (AR 10).

2

national economy that plaintiff could perform, specifically packager and assembler (AR 16); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 15).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

| | | |
|---|---|---|
| (4) | Does the claimant possess the residual functional capacity to perform her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. | |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. | |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

IV. **DISCUSSION**

    A.    **The ALJ Properly Considered the Opinions of the Agreed Medical Examiner**

        1.    **Pertinent Law**

The terms of art used in California workers' compensation claims are not equivalent to those used in Social Security disability cases.  See Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002) (citing Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988)).[3]  Nonetheless, an ALJ may not ignore a medical opinion merely because it was issued in a workers' compensation context.  Booth, 181 F. Supp. 2d at 1106.  Instead, the ALJ must evaluate the objective medical findings in such opinions in the same manner as with any other

---

[3] As observed by the Ninth Circuit:

> Under the California workers' compensation guidelines, a claimant incapable of performing "heavy" work may be capable of performing "light," "semi-sedentary," or "sedentary" work.  None of these three categories, however, is based on strength.  Rather, they turn on whether a claimant sits, stands, or walks for most of the day.  Each entails a "minimum of demands for physical effort." [citation omitted]
>
> The categories of work under the Social Security disability scheme are measured quite differently.  They are differentiated primarily by step increases in lifting capacities.

Desrosiers, 846 F.2d at 576 (internal citation omitted); see also Glass v. Workers' Compensation Appeals Board, 105 Cal. App. 3d 297, 302 (1980) n.1 (quoting and discussing the "Schedule for Rating Permanent Disabilities Under Provisions of the Labor Code of the State of California").

medical opinion evidence.  Id.  The ALJ's decision should reflect, however, that the ALJ properly considered the pertinent distinctions between the two schemes:

> While the ALJ's decision need not contain an explicit "translation," it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.

Booth, 181 F. Supp. 2d at 1106; see, e.g., Desrosiers, 846 F.2d at 576 (finding ALJ's interpretation of treating physician's opinion erroneous where record clear that ALJ affirmatively failed to consider distinction between categories of work under social security disability scheme versus workers' compensation scheme).

### 2. Analysis

Plaintiff contends that the ALJ did not properly consider the opinions expressed in the June 25, 2009 report of an Agreed Medical/Psychiatric Evaluation of plaintiff prepared by Dr. Mohan Nair, an agreed medical examiner for plaintiff's workers' compensation case. (Plaintiff's Motion at 3-6) (citing AR 208-53). More specifically, plaintiff argues that the ALJ failed properly to account for the distinctions between the state workers' compensation terminology used in Dr. Nair's report and the relevant terminology applicable to plaintiff's Social Security disability case, and therefore, in effect, improperly rejected Dr. Nair's opinions without stating any reasons therefor. (Plaintiff's Motion at 5). The Court disagrees.

Here, the administrative decision reflects that the ALJ was well aware of the pertinent distinctions between the terms of art applicable to plaintiff's California workers' compensation claim and plaintiff's Social Security disability case. For example, the ALJ specifically referred to Dr. Nair and Dr. Loren Green (a psychologist who also examined plaintiff) as plaintiff's "Worker's [sic]

Compensation doctors" and noted that they each conducted a "Worker's [sic] Compensation" evaluation of plaintiff. (AR 12-13). The ALJ noted that Dr. Green found plaintiff to be "temporarily totally psychologically disabled" and that Dr. Nair found plaintiff to be "permanent and stationary" – both phrases relevant only in California workers' compensation cases. See, e.g., Iatridis v. Astrue, 501 F. Supp. 2d 1267, 1277 n.24 (C.D. Cal. 2007) (phrase "temporarily totally disabled" part of "California workers' compensation terminology"); Viramontes v. Astrue, 2010 WL 3212861, at 7 n.5 (E.D. Cal. Aug. 12, 2010) ("'Permanent and stationary' is a term of art relevant to workers' compensation law under California law."). The ALJ also noted that in Social Security cases the Commissioner is not bound by the opinions of Workers' Compensation doctors that a person is 'unable to work' for Workers' Compensation purposes . . . ." (AR 14). In addition, the ALJ recognized that Dr. Nair had evaluated the level of plaintiff's mental impairment "with regard to the 8 work functions used to rate psychiatric disabilities for California Workers' Compensation." (AR 14-15).

The decision also reflects that the ALJ properly accounted for the pertinent distinctions between the two statutory schemes. The ALJ discussed at length the findings and opinions of Drs. Green and Nair and the weight the ALJ gave to each. (AR 12-15). The ALJ then explained how the medical findings and opinions from plaintiff's "Workers' Compensation doctors" translated, for Social Security purposes, into the criteria necessary for evaluating the severity of plaintiff's mental impairments (20 C.F.R. § 404.1520a) and the ALJ's assessment that plaintiff was limited to simple, repetitive tasks:

> [T]he undersigned finds that the findings from the mental status examinations and psychological testing, as discussed above, are consistent with a mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of

decompensation, each of extended duration.  The undersigned
concludes that [plaintiff] has less than moderate limitation in
attention/concentration and a mental residual functional capacity for
simple, repetitive tasks.

(AR 15).

Accordingly, a remand or reversal on these grounds is not warranted.

### B. The ALJ's Findings at Step Three Were Free of Material Error

#### 1. Pertinent Law

At step three of the sequential evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the listing.  See 20 C.F.R. § 404.1520(d).  An impairment matches a listing if it meets all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett, 180 F.3d at 1098.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099.  An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present.[4]  Sullivan, 493 U.S. at 531; see 20 C.F.R.

---

[4]Under Social Security regulations, medical equivalence can be found in three ways:

    (1) If you have an impairment that is described in [the Listing of Impairments]. . . but [¶] . . . [y]ou do not exhibit one or more of the findings specified in the particular listing, or [¶] . . . [y]ou exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing, [¶] . . . [w]e will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

    (2) If you have an impairment(s) that is not described in [the Listing of Impairments] . . ., we will compare your findings with those for closely analogous

(continued...)

8

§ 404.1526; SSR 83–19 (impairment is "equivalent" to a Listing only if claimant's symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like claimant's impairment). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("[a] finding of equivalence must be based on medical evidence only") (citing 20 C.F.R. § 404.1529(d)(3)).

Although a claimant bears the burden of proving that she has an impairment or combination of impairments that meets or equals the criteria of a listed impairment, an ALJ must still adequately discuss and evaluate the evidence before concluding that a claimant's impairments fail to meet or equal a listing. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) ("[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."). Remand is appropriate where an ALJ fails adequately to consider a listing that plausibly applies to a plaintiff's case. See Lewis, 236 F.3d at 514 (plaintiff must present plausible theory as to how an impairment or combination of impairments equals a listed impairment).

In order to be considered presumptively disabled under Listing 1.02A, a claimant must demonstrate that (1) she has major dysfunction of a major

---

[4](...continued)
listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing . . ., we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 404.1526(b).

9

peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle) characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint; (2) medical imaging reflects narrowing, destruction, or ankylosis of the affected joint; and (3) the dysfunction results in an "inability to ambulate effectively, as defined in 1.00B2b."[5] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.02(A); see Hamilton v. Astrue, 2010 WL 3748744, at *5 (C.D. Cal. Sep. 22, 2010).

**2. Analysis**

Plaintiff contends that the ALJ failed properly to consider Listing 1.02A. (Plaintiff's Motion at 6-9). More specifically, plaintiff argues that the ALJ erred

---

[5]Listing 1.00B2b defines "inability to ambulate effectively" as follows:

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(B)(2)(b).

at step three because the record contains evidence that plaintiff's "history of poliomyelitis" resulted in an inability to ambulate effectively, which plaintiff claims is equivalent to the criteria under Listing 1.02A. (Plaintiff's Motion at 8). The Court disagrees. Even assuming that the ALJ failed to consider Listing 1.02A, reversal or remand in this case is not necessary since plaintiff fails to present a plausible theory as to how her impairment equals such listing.

First, it does not appear that Listing 1.02A is sufficiently "closely analogous" to plaintiff's "history of poliomyelitis" such that it would be useful for determining equivalence in this case – particularly since poliomyelitis is expressly addressed elsewhere in the Listings. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.11 ("Anterior poliomyelitis").

Second, even assuming, for the sake of argument, that plaintiff's "history of poliomyelitis" is closely analogous to Listing 1.02A, and that the disorder caused plaintiff's alleged inability to ambulate effectively, plaintiff still fails to present a plausible theory of equivalence since plaintiff points to no objective medical evidence in the record which demonstrates that findings related to her alleged "history of poliomyelitis" are of equal medical significance to the other required criteria under Listing 1.02A (*i.e.*, major dysfunction of a major peripheral weight-bearing joint characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint; medical imaging of narrowing, destruction, or ankylosis).

Finally, plaintiff presents no persuasive legal authority which supports her suggestion that a claimant may be found presumptively disabled under the Listings based solely on an alleged inability to ambulate effectively. (Plaintiff's Motion at 7) ("The Listings acknowledge that a medical condition that causes an inability to ambulate effectively warrants disability.").

Accordingly, a remand or reversal on these grounds is not warranted.
///

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 16, 2011

                                          /s/
                             Honorable Jacqueline Chooljian
                             UNITED STATES MAGISTRATE JUDGE